IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN SHIELDS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-2421 |
| | : | |
| GENERAL ELECTRIC CO., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                            **January 9, 2020**

This personal injury action arises out of decedent Diane L. Shields's (Mrs. Shields) exposure to asbestos during her employment at the Motor Coils Manufacturing Company (Motor Coils) plant in Braddock, Pennsylvania. Plaintiff Martin Shields (Mr. Shields), as administrator of Mrs. Shields's estate and in his own right, brings negligence, wrongful death, and survivorship claims under Pennsylvania law. Defendants Wabtec Corporation (Wabtec), successor to Motor Coils, General Electric Co. (General Electric), and CBS Corporation, successor to Westinghouse Electric Corporation (CBS) have each moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because Mr. Shields's claims are preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701, et seq., the Court will grant Defendants' motions.

**BACKGROUND**[1]

For many years, Motor Coils operated a manufacturing and refurbishing facility in Braddock, Pennsylvania (Braddock Plant).[2] The Braddock Plant specifically manufactured and

---

[1] In evaluating a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The facts presented herein are undisputed unless otherwise noted. Where the parties dispute certain facts, the Court views the facts in Mr. Shields's favor.

[2] Wabtec is the successor in interest to Motor Coils.

refurbished traction motors used in railroad locomotives. *See* Shields Dep. 22, Apr. 26, 2018.[3]
Approximately 65% of the work completed at the Braddock Plant involved refurbishing traction motors. *Id.* at 173-74. The Braddock Plant refurbished approximately eight to ten traction motors per day, including traction motors that were made by General Electric and Westinghouse Electric Corporation.[4]

Mrs. Shields worked as a laborer at the Braddock Plant from 1990 to 1996. Mrs. Shields's position required her to clean pinion gears—a subpart of the traction motors. The Braddock Plant was a single-room building with no partition between the refurbishing area and the cleaning area where Mrs. Shields worked. *See id.* at 30-31. Mrs. Shields was exposed to asbestos in the Braddock Plant because her workstation was located in close proximity to the refurbishing area—which produced large amounts of dust. *See id.* at 31. Mrs. Shields also had secondary exposure to asbestos when she laundered Mr. Shields's dusty work clothing. In May 2014, Mrs. Shields was diagnosed with lung cancer. After undergoing rounds of chemotherapy and radiation treatment, Mrs. Shields passed away in February 2015.

In April 2016, Mr. Shields commenced the instant action in the Court of Common Pleas of Philadelphia County. On June 6, 2018, Wabtec removed the action to this Court. This case was initially consolidated under *In re Asbestos Products Liability Litigation (No. IV)*, MDL 875 (E.D. Pa.) and assigned to the Honorable Eduardo C. Robreno for pretrial matters. On July 9, 2019, Defendants filed separate motions for summary judgment asserting Mr. Shields's claims are preempted by the Locomotive Inspection Act (LIA). On September 18, 2019, the case was

---

[3] Mrs. Shields passed away prior to the filing of this action. Mr. Shields, who also worked at the Braddock Plant from 1973 to 2002, testified as to the conditions and practices at the Braddock Plant.

[4] CBS is the successor in interest to Westinghouse Electric Corporation.

reassigned to the undersigned. The Court heard oral argument on Defendants' motions on November 29, 2019. The motions are now ripe for disposition.

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Defendants argue they are entitled to judgment as a matter of law because Mr. Shields's claims are preempted by the LIA's broad field preemption. Mr. Shields contends LIA preemption does not apply to the traction motors at issue in this case.

3

The Supremacy Clause of Article VI provides that "federal law 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Kurns v. R&R Friction Prods. Corp.*, 565 U.S. 625, 631 (2012) (quoting U.S. Const., Art. VI, cl. 2). Three types of federal preemption exist: express preemption, implied conflict preemption, and field preemption. *Kurns v. Chesterton*, 620 F.3d 392, 395 (3d Cir. 2010), *aff'd sub nom. Kurns*, 565 U.S. at 625. Field preemption "arises when a state law or regulation intrudes upon a 'field reserved for federal regulation.'" *Id.* at 396 (quoting *United States v. Locke*, 529 U.S. 89, 111 (2000)). "Where Congress occupies an entire field . . . even complimentary state regulation is impermissible." *Arizona v. United States*, 567 U.S. 387 (2012).

The LIA sets forth safety standards applicable to all "locomotives," their "tender," and "all parts and appurtenances." 49 U.S.C. § 20701. The LIA confers to the Secretary of Transportation, the "general" power to address "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *See Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611 (1926). The LIA does not contain an express preemption clause. In *Napier v. Atlantic Coast Line R. Co.*, the United States Supreme Court held that the LIA manifests the intention to occupy the entire field of regulating locomotive equipment. *Id.*

Recently, in *Kurns v. Railroad Friction Products Corp.*, the Supreme Court reaffirmed the wide-breadth of the LIA's field preemption. *See* 565 U.S. at 637. In *Kurns*, the plaintiff alleged he developed mesothelioma after being exposed to asbestos from locomotive brake shoes and insulation on locomotive boilers. *See id.* at 628.. The plaintiff brought state law claims for defective design and failure to warn. *Id.* at 628–29. The Supreme Court held that the field of preemption under the LIA was "'the entire field of regulating locomotive equipment,' to the exclusion of state

regulation[,]" which provides for no exceptions for state common law duties or standards of care. *Id.* at 637 (quoting *Napier*, 272 U.S. at 611–12).

With respect to the LIA's preemption of Mr. Shields's claims, there are two issues before the Court. The Court must determine (1) whether the traction motors at issue are parts and appurtenances under the LIA; and (2) if so, whether *Kurns* precludes Mr. Shields's common law claims. The Court concludes that the traction motors at issue are parts and appurtenances under the LIA and that *Kurns* precludes Mr. Shields's common law claims.

Turning to the first issue, the Court concludes that the traction motors are parts and appurtenances under the LIA. Pursuant to the LIA, "'every part of the locomotive and tender and of all appurtenances' is defined as '[1] whatever in fact is an integral or essential part of a completed locomotive, and [2] all parts or attachments definitely prescribed by lawful order' of the Secretary [of the Department of Transportation]." *Hassell v. Budd Co.*, No. 09-90863, 2014 WL 3955061, at *1 n.1 (E.D. Pa. Feb. 27, 2014) (quoting *S. Ry. Co. v. Lunsford*, 297 U.S. 398, 402 (1936)). In this instance, the Secretary has promulgated regulations specific to traction motors. *See* 49 C.F.R. § 229.45 ("All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train. These conditions include: insecure attachment of components, including . . . traction motors . . . pinions . . . ."). Given that the Secretary has specifically regulated traction motors, traction motors are parts and appurtenances under the LIA. *See Hassell*, 2014 WL 3955061, at *1 n.1.

Even assuming the Secretary had not specifically regulated traction motors, they would be considered parts and appurtenances because they are "integral or essential part[s] of a completed locomotive." *See id.* at *1. As Mr. Shields testified, the traction motor is the powerhouse of the locomotive and "everything you need to operate the locomotive." Shields Dep. 168; *see also id.* at

169 (stating a locomotive "ain't going nowhere" without a traction motor and that a traction motor provides power to the locomotives axles). Thus, even in the absence of regulation by the Secretary, traction motors are parts and appurtenances under the LIA because they are "integral or essential part[s] of a completed locomotive." *Hassel*, 2014 WL 3955061, at *1 n.1.

Mr. Shields argues the traction motors at issue in the instant case are not parts and appurtenances because they were being sold by railroad companies to Motor Coils as scrap. Resp. in Opp'n to Wabtec's Mot. 9. In support of his argument, Mr. Shields relies on *Milesco v. Norfolk Southern Corp.*, 807 F. Supp. 2d 214 (M.D. Pa. 2001). In *Milesco*, the plaintiff was injured by a gas seat cushion which was removed from a locomotive and later exploded after it was not properly vented. The court held that the gas cushion was not an "appurtenance" after it had been removed from the locomotive to be scrapped and therefore the plaintiff's claims were not subject to preemption under the LIA. In so holding, the court stated:

> Here, in contrast to a cushion unit in active use, or one being repaired in order to return to active use, it is difficult to discern why a discarded unit whose only purpose is to sit idly by and await its ultimate destination—the scrap yard—should be considered an appurtenance regulated by the BIA.

*Id.* at 223.

Mr. Shields's reliance on *Milesco* is unpersuasive. Unlike the gas cushion in *Milesco*, the traction motors in the instant case were not "sit[ting] idly by and [awaiting their] ultimate destination—the scrap yard." *Id.* Rather, the traction motors that allegedly caused Mrs. Shields's asbestos exposure were purchased by Motor Coils for the purpose of being refurbished and returned to service for locomotives. *See, e.g.*, Shields Dep. 26, Apr. 26, 2018 ("Q: Okay. And they bring them back to the plant. So, now, tell me what they are doing with these traction motors that they are getting from -- A: They bring them back -- they bring them back and they refurbish them. They strip them down, clean them up, and salvage what they can and get rid of the rest of them.");

6

*id.* at 303-04 ("Q: And after traction motors were stripped and refurbished at Motor Coils, they were then sold back to the railroad where they were installed and used again on Locomotives. Is that your understanding? A: Yeah. It may not be the railroad that it originally came from, but yeah."). Given that the traction motors in the instant matter were purchased to be refurbished and returned to locomotive service, *Milesco* is inapposite to this case. The Court therefore concludes that the traction motors at the Braddock Plant are parts and appurtenances under the LIA.[5]

The Court turns to the second issue—whether *Kurns* precludes Mr. Shields's common law negligence, survivorship, and wrongful death claims. The LIA precludes Mr. Shields's claims because his claims "are directed at the equipment of locomotives," *Kurns*, 565 U.S. at 635, and seek to impose Pennsylvania's "duties and standards of care on the manufacture and maintenance of locomotive equipment," *Delaware & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 662 (3d Cir. 2015)

At the outset, this case differs from *Kurns* because Mr. Shields does not assert product liability claims. In *Kurns*, the Supreme Court found the LIA preempted the petitioner's strict liability and failure-to-warn claims. In the instant case, however, Mr. Shields brings common law negligence, wrongful death, and survivorship claims. To determine whether LIA preemption applies, the Court must look to the substance of Mr. Shields's claims and consider whether they seek to impose Pennsylvania's "duties and standards of care on the manufacture and maintenance of locomotive equipment." *Knoedler*, 781 F.3d at 662.

---

[5] Insofar as Mr. Shields asserts the traction motors at issue are not parts and appurtenances because they were not "in use" or physically attached to a locomotive at the time of Mrs. Shields's exposure, this argument is meritless. *See Kurns*, 565 at 634 (rejecting argument that "state-law claims arising from repair or maintenance—as opposed to claims arising from use on the line—do not fall within the pre-empted field"); *Perry v. A.W. Charleston*, Inc., 985 F. Supp. 2d 669, 676 (E.D. Pa. 2013) (rejecting argument that brake shoes should not be considered appurtenances when they are not attached to the rail cars).

The Third Circuit's analysis in *Delaware & Hudson Railway Co. v. Knoedler Manufacturers, Inc.*, is instructive here. In *Knoedler*, the plaintiff-railroad company settled several lawsuits brought against it pursuant to the Federal Employers' Liability Act (FELA) by employees who suffered injuries from defective train seats that violated the LIA. *See id.* at 658. The railroad then brought suit against the manufacturer of the seats and a company that had attempted to repair the seats. The plaintiff brought claims for common law indemnity and contribution based on its liability under FELA. The district court dismissed the plaintiff's claims concluding the LIA preempted them.

The Third Circuit reversed the district court holding LIA preemption does not exist where a plaintiff seeks to use state-law claims to redress violations of a federal standard of care. *See id.* at 668. Interpreting *Kurns* and *Napier*, the Third Circuit in *Knoedler* determined that the LIA does not preclude "all state claims regarding the design and manufacture of locomotive equipment." *Id.* at 662. Rather, it found that the LIA precludes a state from imposing its "own duties and standards of care on the manufacture and maintenance of locomotive equipment." *Id.* (citing *Kurns*, 565 U.S. at 632; *Napier*, 272 U.S. at 613). The Third Circuit noted that the goal of "uniform railroad operating standards is not undermined when state-law claims are used to enforce federal law." *Id.* at 666.

Applying the Third Circuit's guidance in *Knoedler*, Mr. Shields's claims are subject to preemption by the LIA. Unlike *Knoedler*, Mr. Shields's claims do not seek to use state-law claims to redress violations of federal standards of care. Rather, Mr. Shields's claims specifically seek to impose Pennsylvania's common law "duties and standards of care on the manufacture and maintenance of locomotive equipment." *Id.* at 662. Allowing Mr. Shields's claims to move forward would directly undermine the LIA's goal of "uniform railroad operating standards" by allowing

8

Pennsylvania to interject its own duties and standards of care on federally regulated railroad equipment. *Id.* at 666. The Court therefore concludes Mr. Shields's common law negligence, wrongful death, and survivorship claims are subject to preemption under the LIA.[6]

**CONCLUSION**

In sum, because the traction motors at issue are parts and appurtenances and Mr. Shields's common law negligence, wrongful death, and survivorship claims are within the scope of the LIA, Mr. Shields's claims are preempted by the LIA and Defendants are entitled to judgment as a matter of law. Accordingly, the Court will grant Defendants' motions for summary judgment and enter judgment in favor of Defendants on all counts.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[6] Mr. Shields alternatively argues he should, at least, be permitted to proceed against Wabtec on a theory of employer liability. Mr. Shields, however, does not cite any authority in support of his argument. And, in any event, Mr. Shields's theory of liability would still impose Pennsylvania's duties and standards of care on the manufacture and maintenance of locomotive equipment. Mr. Shields's employer liability is therefore meritless.